**MOT**
CHRISTOPHER R. ORAM, ESQ.
Nevada Bar No. 4349
LAW OFFICE OF CHRISTOPHER R. ORAM
520 S. 4th St.
Las Vegas, NV 89101
(702) 598-1471
contact@christopheroramlaw.com
CHARLES R. GOODWIN, ESQ
Nevada Bar No. 14879
GOODWIN LAW GROUP, PLLC
6671 Las Vegas Blvd S Suite 210
Las Vegas, NV 89119
(702) 472-9594
charles@goodwinlawgroup.net
Attorneys for Defendant

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:22-CR-30-RFB-DJA |
| PLAINTIFF, | **DEFENDANT'S REPLY** |
| V. | |
| YOANNY VAILLANT, | |
| A/K/A YOANY VAILLANT FAJARDO, | |
| DEFENDANT. | |

**DEFENDANT YOANNY VAILLANT FAJARDO'S REPLY TO UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION FOR A NEW TRIAL**
**ARGUMENT AND AUTHORITY**

The government's response to the motion for a new trial highlights its fundamental failure to address the central issue raised by the defense: the insufficiency of the evidence. Rather than engaging with the heart of the argument, the government has inundated the court with an array of experts, evidence, and peripheral claims that fail to rebut the primary points raised. This quantity-over-quality approach does not cure the deficiencies in the government's case. The uncontested facts remain pivotal: the sickrage program

1

was found solely on Mr. Dallman's computer, and there is no evidence tying Mr. Vaillant to that program. The government's conflation of the distinct sickrage program and the separate server folder accessible to Mr. Vaillant has created a misleading narrative that is unsupported by the evidence and fundamentally undermines the integrity of the conviction.

The government's exploitation of the defense's inability to fully counter the mischaracterization of Mr. Vaillant and Mr. Dallman's relationship, compounded by the deliberate ignorance instruction, undermined the fairness of the trial. While the instruction itself may not have been objectionable in isolation, its application within the broader context of the trial rendered it prejudicial. Fundamental principles of due process and the Sixth Amendment guarantee a defendant the right to present a complete defense, including the ability to argue and contextualize evidence before the jury. Yet, the defense was barred from introducing critical evidence demonstrating Mr. Dallman's abusive behavior toward Mr. Vaillant, while the government was permitted to build an unchallenged narrative of friendship. This imbalance not only frustrated Mr. Vaillant's right to a fair trial but also misled the jury, necessitating a new trial to rectify these constitutional violations.

**A. THE GOVERNMENT FAILED TO SUBSTANTIVELY RESPOND TO THE SUFFICIENCY OF THE EVIDENCE.**

The government has failed to rebut the motion for a new trial. Instead of substantively answering the sufficiency of the evidence, the government instead lines up lots of experts and evidence that do not speak to the issue defense raised in hopes that the quantity will outweigh the lack of quality evidence. "Evidence is sufficient if, when viewed in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[1] Failing to answer the main point of the motion for a new trial – that uncontroverted evidence directly contradicts the

---

[1] United States v. Loveland, 825 F.3d 555, 558-59 (9th Cir. 2016).

government's position that led to the conviction – necessarily means there was insufficient evidence to convict.

Mr. Vaillaint never had access to or knowledge of sickrage on Mr. Dallman's computer. This point right here unravels the entire government's case and remains uncontested. This will be addressed below; however, it is an uncontested fact that the sickrage program was on Mr. Dallman's computer. There was no evidence that Mr. Vaillaint had access to that computer. There was also a server with a folder called sickrage that Mr. Vaillaint did have access to. That folder was devoid of any software program and was simply a database. Conflating the two creates confusion and has led to a conviction that is insufficient based on the evidence.

The government put forth eight reasons why the evidence was insufficient. Each missed their mark or there was evidence that did not say what the government said it would. Each will be addressed in turn:

1) **Mr. Vaillant's Experience prior to coming to America does not prove he had knowledge that he was infringing American copyright.**

The government attempts to use Mr. Vaillant's own experience against him. His ability to understand computer languages and the nature of his work prior to coming to America is instead offered as knowledge of wrongdoing. Yet, there was no link between the resume of Mr. Vaillaint and his knowledge of pirating. "To prove a conspiracy 'the evidence must show that 'each defendant knew, or had reason to know, that his benefits were probably dependent on the success of the entire operation.'"[2] There is no case law that imputes knowledge of a conspiracy via technical knowledge, and thus the resume and his technical knowledge is immaterial to the case.

2) **Dallman and Mr. Vaillant's texts concerning sickrage do not show that he had knowledge of a program called sickrage that was illegally downloading movies and shows.**

---

[2] United States v. Duran, 189 F.3d 1071, 1080 (9th Cir. 1999) (quoting United States v. Kearney, 560 F.2d 1358, 1362 (9th Cir. 1977)).

The government attempts to address the sickrage discrepancy via text messages but conflate the two. "…[T]here can be no conviction for guilt by association, and it is clear that mere association with members of a conspiracy…without an intention and agreement to accomplish a specific illegal objective, is not sufficient to make one a conspirator."[3] First, none of the text messages cited show that Mr. Vaillant knew what the sickrage program was doing except downloading. If these messages were doing the work the government is claiming they are, then the government would have had their smoking gun, something that they acknowledged they did not have in this case. In fact, the text quoted, concerning sickrage downloading, does the opposite as Mr. Vaillant is speaking about working on servers, not on the program. That it is being introduced to show knowledge of Mr. Vaillant using the program makes it unclear if the government themselves understand that there was a folder named sickrage being worked on by Mr. Vaillant. Furthermore, the illegal operation was not laid out. The text message in question only explains how it goes from the server to the customer, not how it got from the internet to the server. It is the second part where criminal activity occurred. Not the first part. This section again fails to address directly the insufficiency of the evidence because it again attempts to conflate the two sickrages.

The APIs are indicative of nothing. These are trotted out to show knowledge, but ultimately an API is like a key. Mr. Vaillant built the lock on the door for the API to open, but did not have access to or work on what those API keys were doing. There is no evidence to suggest that he did and no testimony to the contrary.

**3) Number of Downloads by sickrage does not prove that Mr. Vaillant knew where they were coming from or how Dallman acquired them.**

The government's argument about how many movies were downloaded fails to show knowledge. Specifically, the number of shows downloaded does not prove that Mr. Vaillaint knew anything. No experts testified that Mr. Vaillant was working on that computer. It was seized from Mr. Dallman's room, not Mr. Vaillant's. There is no digital

---

[3] United States v. Melchor-Lopez, 627 F.2d 886, 891 (9th Cir. 1980).

footprint from Mr. Vaillant and nothing connecting him to that side of the operation. Arguing this is proof of knowledge cannot work here because all the evidence listed just showed what was happening in the background, not that Mr. Vaillant participated in it.

**4) Mr. Vaillant working on the server does not mean he knew where the videos came from.**

Mr. Vaillant working on a server database does not mean he knew of illegal activity. Repopulating the server does not mean that the shows were placed back on it. Repopulating a server means to refresh it or add data to it. The data he was adding was information about the shows and the movies. Not the actual shows and movies.

**5) The fake website only showed that Mr. Vaillant was also fooled.**

"At minimum, the government must prove the defendant (1) knew or had a reason to know of the scope of the conspiracy and . . . had reason to believe that [his] own benefits were dependent on the success of the entire venture; and (2) inten[ded] to effectuate the object of the conspiracy."[4] Mr. Vaillant not knowing that the fake website was actually a fake website is not the smoking gun the government wants it to be. Instead, it entirely frustrates the second element of the conspiracy. Him believing he was making "Netflix for planes" and telling Special Agent Chase the same just show he did not have the knowledge, and that he never intended to effectuate the object of the conspiracy because he didn't know what the object of the conspiracy was.

**6) Mr. Vaillant's words taken out of context do not impute knowledge of wrongdoing.**

The government is attempting to take two messages out of context to impute knowledge to Mr. Vaillant. Neither of those messages were accompanied by explanations of the meanings. There is no evidence that Mr. Vaillant was aware that their funding was cut off for illegal streaming or that he was threatening legal action for them doing so. The jury knew that because they were presented with this information at trial. Mr. Vaillant

---

[4] United States v. Jaimez, 45 F.4th 1118, 1123 (9th Cir. 2022)(citations omitted).

never had access to that information, and no evidence suggested that he did. Similarly, the last message cited refers to lack of payment and not to any streaming service.

**7)  Mr. Vaillant being paid like a normal employee does not show that he knew illegal activities were happening.**

Mr. Vaillant was paid money for services rendered. This does not make the knowledge of illegal activities more or less likely. "Under 17 U.S.C. § 506(a)(1)(A), a person is guilty of criminal copyright infringement if he or she 'willfully' infringes a copyright for the purpose of commercial advantage or private financial gain."[5] Here, the government is trying to make the element of financial gain paramount, because the element requiring the willful infringement is entirely lacking.

**8)  Mr. Vaillant being fooled doesn't mean he knew there was illegal behavior.**

Mr. Vaillant not knowing he was doing illegal things does not mean he secretly knew illegal things were being done. The evidence at trial did not prove any of what the government is claiming it did. There was no evidence that contradicts the simple and uncontested fact that Mr. Vaillant did not have access to the computers where the items were being downloaded. He only had access to the servers.

The government put forth 8 reasons its evidence was sufficient but failed to answer the point the defense raised. That is that there were two sickrages. That is uncontested. The computer downloading the files was Mr. Dallman's. Also uncontested. There were two separate and distinct sickrages and Mr. Vaillant never had access to the software program breaking the law. Without addressing how the evidence shows this is untrue, the government has insufficient evidence to convict.

**B.  THE DEFENSE PREVENTED FROM PUTTING ON A COMPLETE DEFENSE**

It is axiomatic that the defense is allowed to put on a complete defense. The United States Supreme Court has stated, "the right of an accused in a criminal trial to due process

---

[5] United States v. Anderson, 741 F.3d 938, 946 (9th Cir. 2013).

is, in essence, the right to a fair opportunity to defend against the State's accusations."[6] The Sixth Amendment guarantees:

> The Constitutional right of a defendant to be heard through counsel necessarily includes his right to have his counsel make a proper argument on the evidence and the applicable law in his favor, however simple, clear, unimpeached, and conclusive the evidence may seem, unless he has waived his right to such argument, or unless the argument is not within the issues in the case, and the trial court has no discretion to deny the accused such right.[7]

Whether it's the sixth amendment to the United States Constitution or the Due Process Clause, the defense is allowed to put on a complete case. If that right is frustrated it defeats the end of public justice.

The government took advantage of the defense's inability to push back at the characterization of Mr. Vaillant and Dallman's relationship. Exhibit 119, excluded by order of the court, along with arguments made by defense counsel would have rebutted the government's case in chief. That is because the government elicited testimony about the relationship between Dallman and Mr. Vaillant. That relationship was characterized as a friendship. The defense could not push back on that because the one piece of evidence that would have proven that there was no friendship was excluded. This, "deprives a defendant of the basic right to have the prosecutor's case encounter and "survive the crucible of meaningful adversarial testing."[8]

### C. THE DELIBERATE IGNORANCE INSTRUCTION BECAME OBJECTIONABLE WHEN COUPLED WITH THE RESTRICTIONS ON DEFENSE'S ARGUMENTS.

The government's reply itself highlights the impropriety of the deliberate ignorance instruction. Deliberate ignorance involves, "(1) a subjective belief that there is a high probability a fact exists and (2) deliberate actions taken to avoid learning the truth."[9] The defense did not object to the jury instruction because it did not become germane until

---

[6] Chambers v. Mississippi, 410 U.S. 284, 294, 93 S. Ct. 1038, 1045 (1973).
[7] Herring v. New York, 422 U.S. 853, 860, 95 S. Ct. 2550, 2554 (1975).
[8] Crane v. Kentucky, 476 U.S. 683, 690-91, 106 S. Ct. 2142, 2147 (1986).
[9] United States v. Ramos-Atondo, 732 F.3d 1113, 1119 (9th Cir. 2013).

closing arguments. It wasn't until Mr. Vaillaint was being misrepresented as a friend of Dallman that it became objectionable. That is because the friendship lends credence to the second part – that because Mr. Vaillant is a friend he does not want to learn the whole truth. However, the defense was prevented from making strong arguments about how Mr. Vaillant was abused and bullied by Mr. Dallman. So well did the defense adhere to the court's ruling that even the government acknowledged that the defense was in perfect compliance.[10] The exhibit that the government references – one they proposed and stipulated to – would have rebutted the entire "friend" narrative. It was an abusive and rude text message about Mr. Vaillant that made it very clear that they were not friends. The evidence also showed that Mr. Vaillant was a victim of wage theft, but that was also stricken. He received thousands of texts over a four-month period. Again, that cannot be called abusive, yet any person who received that many text messages over a four-month period would believe we were being abused.

    The defense's opening statement was entirely supported by the evidence at trial. "An opening statement should be limited to a statement of facts which [a party] intends or in good faith expects to prove."[11] Nothing said was untrue. Mr. Vaillaint was not paid for a period of two months, yet the company had money in its coffers. That is wage theft. Mr. Vaillant was being "screwed over', and that's not contested. In fact, all of what was said in the opening statement was supported by facts in the trial, or facts that should have been in the trial but were not because Exhibit 119 was excluded. The opening statement was not objectionable.

## CONCLUSION

    The government's response fails to address the fundamental insufficiency of the evidence while relying on mischaracterizations and procedural imbalances that undermined the fairness of the trial. The uncontested facts—that the sickrage program

---

[10] ECF 653

[11] Leonard v. United States, 277 F.2d 834, 841 (9th Cir. 1960)(replaced "government" with "party").

was exclusively on Mr. Dallman's computer and that Mr. Vaillant had no access to it—remain unrefuted and unravel the government's case. The deliberate ignorance instruction, when paired with restrictions on the defense's ability to rebut key narratives, deprived Mr. Vaillant of his constitutional right to present a complete defense. The trial's procedural and evidentiary shortcomings, compounded by the government's failure to substantively rebut the motion, compel the conclusion that a new trial is necessary to ensure justice and uphold the integrity of the judicial process. We now pray to this honorable court for the following relief:

**ORDER** a new trial.

DATED this 27th day of November 2024.

*/s/Christopher R. Oram*_____          */s/Charles R. Goodwin*_____
CHRISTOPHER R. ORAM, ESQ.          CHARLES R. GOODWIN, ESQ.
Nevada Bar No.: 4349                              Nevada Bar No.: 14879
Attorney for Defendant                          Attorney for Defendant

## **CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on November 27th, 2024, I served a true and correct copy of the above captioned motion on the parties of record through the court's CM/ECF filing system.

                                         */s/Charles R. Goodwin*
                                         An Employee of Goodwin Law Group, PLLC